UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ALLEN ATKINS,

        Plaintiff,                     Case No. 1:22-cv-983

v.                                        Honorable Paul L. Maloney

CHRISTIAN ERNEST GAUDERER et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Further, under Federal Rule of Civil Procedure 41(b), the Court may dismiss a case "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b).

In an opinion and order entered on September 14, 2022, in action no. 2:22-cv-150, a case that Plaintiff previously filed in this Court, the Court advised Plaintiff regarding the proper joinder of parties and claims. Op. & Order, *Atkins v. Dawdy*, (W.D. Mich. Sept. 14, 2022), (ECF Nos. 22, 23). In that action, Plaintiff had sued more than eighty Defendants, and the Court determined that all but five Defendants were misjoined. In the Court's September 14, 2022, opinion in action no. 2:22-cv-150, the Court cautioned Plaintiff "that he must limit all future actions to Defendants and claims that are transactionally related to one another." Op., *Atkins v. Dawdy*, (W.D. Mich. Sept. 14, 2022), (ECF No. 22, PageID.247.) The Court further cautioned Plaintiff "that failure to

file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review." *Id.*

As explained below, in this action, Plaintiff has wholly failed to comply with the Court's instructions regarding the filing of a non-"scattershot" complaint. Because Plaintiff failed to comply with the Court's September 14, 2022, opinion in action no. 2:22-cv-150, this action will be dismissed without prejudice. *See* Fed. R. Civ. P. 41(b). Plaintiff's "motion for temporary restraining order [and] motion for preliminary and permanent injunction," motion to serve the complaint, and motion to expedite will be denied.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan, the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan, and the Chippewa Correctional Facility in Kincheloe, Chippewa County, Michigan. (*See* Compl., ECF No. 1, PageID.5.) Plaintiff sues MDOC Director Heidi E. Washington; MDOC Mental Health Services Director David Dawdy; Qualified Mental Health Professionals Melanie A. Clark, Heather Woodin, Patricia Howland, Christian Ernest Gauderer, Debra LaBlanc, Jennifer Fahai, Kyle D. Wood, Leonard Altshuler, Jamie Costner, Aleksandra Wilanowski, Helen Farrish, and Melody Chapin; Grievance Coordinators Lisa Beecher, Melissa Gustafson, Michael McLean, Kimberly Atkinson, and Unknown Hofbauer; KCF Correctional Officer Unknown Shields; KCF Registered Nurse M. Vieau; DRF Warden Randee Rewerts; KCF Warden Jack Kowalski; URF Warden Connie Horton; URF Acting Warden James Corrigan; KCF Reviewing Officer Unknown Party #1; KCF "Sergeant, Lieutenant, Captain, or Shift Commander"

2

Unknown Party #2; DRF Food Service Director Unknown Party #3; MDOC Mental Health Rights Specialist Sara Hayden; and URF Prison Counselor Candace Newton. (*Id.*, PageID.6–8.)

In Plaintiff's complaint, he alleges that in April of 2017, he had two psychological evaluations prior to his sentencing in his criminal case, and both evaluations found that "'no evidence exists' that Plaintiff is mentally ill." (*Id.*, PageID.9.)[1] In 2019, "Plaintiff voluntarily enlisted for mental health services at Muskegon Correctional Facility (MCF)." (*Id.*) Subsequently, Plaintiff was transferred to DRF in August of 2019. (*Id.*) On October 15, 2019, Plaintiff wrote a Prison Rape Elimination Act (PREA) grievance against Officer J. Fair (not a party) for sexually assaulting Plaintiff. (*Id.*) Thereafter, Plaintiff "wrote a grievance regarding brown water at DRF containing carcinogens, PFAs, [and] harmful metals, and Defendants Washington and Rewerts not notifying the DRF prisoners that the chow hall/kitchen peanut butter contains 'acrycamide,' which is known carcinogen that causes reproductive harm." (*Id.*) "Plaintiff also made oral complaints to file a federal lawsuit," and his "requests for audit records were denied by Defendant Rewerts." (*Id.*)

In 2019, while Plaintiff was incarcerated at DRF, Defendant Gauderer "was assigned as [Plaintiff's] psychiatrist." (*Id.*, PageID.10.) During Plaintiff's "first video hearing with Defendant Gauderer," Plaintiff told Defendant Gauderer that Plaintiff "was innocent of [his] offense, [and] that the decedent on [Plaintiff's] case hired hitmen . . . 'to kill [Plaintiff] and have [Plaintiff] killed in retaliation' for [Plaintiff] throwing urine in her face because she stole [their] mother's Social Security check money." (*Id.*)

---

[1] In this opinion, the Court corrects the capitalization, punctuation, and spelling in quotations from Plaintiff's filings.

3

On December 12, 2019, Michelle Stephens (not a party) "served Plaintiff [with] a notice of hearing for a video hearing" regarding "'involuntary mental health services' and 'involuntary drug treatment.'" (*Id.*) Plaintiff asked Stephens why the hearing was scheduled, and Stephens said that "Defendants Gauderer, Dawdy, [and] Washington ordered [the] involuntary mental health panel order 'in retaliation' for Plaintiff's written and oral grievances." (*Id.*) Plaintiff states that on December 12, 2019, Defendants Clark, Woodin, and Howland "wrongfully diagnosed Plaintiff as mentally ill and ordered a 90-day order for involuntary mental health services 'in retaliation' for Plaintiff's prior oral and written grievances." (*Id.*)

On December 13, 2019, Ms. Thompson (not a party) "orally notified Plaintiff that if Plaintiff stopped filing grievances, signed a lawsuit waiver form, [and] paid . . . $20,000.00, [Thompson would] have Defendants Washington and Dawdy reverse [Plaintiff's] involuntary panel order on appeal." (*Id.*) On December 17, 2019, and January 18, 2020, "Plaintiff sent letters to Defendants Washington, Dawdy, [and] Hayden, but they never responded." (*Id.*, PageID.11.)

As part of the order for involuntary mental health services, "Defendants Clark, Woodin, Howland, Gauderer, Washington, [and] Dawdy ordered involuntary drug treatment for Benztropine and Risperidone." (*Id.*) Plaintiff states that in December of 2019, "Benztropine and Risperidone caused [him] . . . physical injuries," including a rash, daily nasal congestion, an inability to breathe from his nose, fatigue, irregular heartbeat, severe chest pain, severe migraines and heartaches, and sleep deprivation. (*Id.*, PageID.12.)

Subsequently, on January 9, 2020, Plaintiff was transferred from DRF to KCF. (*Id.*) During Plaintiff's incarceration at KCF, "Defendant Clark was assigned as Plaintiff's psychiatrist" and "Defendant LeBlanc as Plaintiff's case manager." (*Id.*, PageID.13.) Plaintiff states that from January 9, 2020, to August 29, 2020, Defendants Clark and LeBlanc "drafted false mental health

4

reports and papers in support of [a] false mental illness diagnosis 'in retaliation for Plaintiff's oral [and] written grievances, oral requests for audit records, and oral notices of future federal litigation." (*Id.*, PageID.13.)

On March 9, 2020, Jillian LaDoux (not a party) served Plaintiff with a notice of hearing "regarding a mental health services 'involuntary panel hearing.'" (*Id.*) LaDoux told Plaintiff that "Defendants Washington, Dawdy, Kowalski, Clark, Altshuler, Wood, Costner, [and] Fahai [were] going to extend [Plaintiff's] panel order and deny [Plaintiff's] appeal 'in retaliation' for oral and written grievances." (*Id.*, PageID.13.) On March 10, 2020, "Defendants Altschuler, Wood, [and] Costner signed a committee vote for a 90-day panel order extension, and Defendant Fahai denied Plaintiff's 3/11/2020 appeal." (*Id.*)

On June 8, 2020, Plaintiff was served with another notice of hearing for involuntary mental health treatment. (*Id.*) On June 9, 2020, "Defendants Wilanowski, Wood, [and] Farrish signed a committee vote for a 180-day panel order extension." (*Id.*) On August 26, 2020, while Plaintiff was receiving his psychotropic drugs, Plaintiff asked Defendant Vieau why Plaintiff's "panel order keeps getting extended." (*Id.*) Defendant Vieau told Plaintiff that "Defendants Washington, Dawdy, [and] Kowalski keep ordering Defendants Clark, Wood, and the panel committee psychiatrists to keep extending [Plaintiff's] panel order 'in retaliation' for [Plaintiff's] oral [and] written grievances." (*Id.*, PageID.14.) Plaintiff asked Defendant Vieau and Defendant Shields, who was also present, "to draft and sign" affidavits to support Plaintiff's lawsuit regarding prison personnel's retaliation, and Defendants Vieau and Shields refused to do so. (*Id.*) When Plaintiff "attempted to exit the KCF health care unit, Defendant Shields grabbed and squeezed Plaintiff's genitalia in a sexual manner." (*Id.*) Plaintiff asked Defendant Vieau "to call the shift commander," and Defendant Vieau "refused [and] laughed," and told Plaintiff "that he [would not] be filing any

5

grievances in solitary confinement." (*Id.*) Approximately ten to twenty minutes later, Defendant Unknown Party #1 handcuffed Plaintiff and "placed him inside an isolation room." (*Id.*, PageID.15.) Plaintiff advised Defendant Unknown Party #1 that the handcuffs were too tight, and Plaintiff requested medical attention "to avoid infection," but Defendant Unknown Party #1 refused. (*Id.*) Plaintiff states that on August 29, 2020, he learned that Defendants Vieau and Shields had written "false misconduct reports" against Plaintiff. (*Id.*)

Plaintiff was tested for COVID-19 on August 28, 2020, and on August 29, 2020, Plaintiff was transferred to URF and placed in the solitary confinement unit. (*Id.*) Plaintiff contends that he was transferred to URF "in retaliation for oral attempts to seek criminal prosecution against Defendant Shields and Vieau for sexual assault, aiding and abetting, and abuse of a mental health recipient and oral notice to seek audit reports and sue." (*Id.*) On September 8, 2020, Plaintiff was found not guilty of the "retaliatory assault and battery class I misconduct report" that Defendant Shields had written on August 28, 2020. (*Id.*, PageID.16.) That same day, September 8, 2020, Plaintiff was transferred to general population at URF. (*Id.*)

During Plaintiff's incarceration at URF, Defendant Chapin "was assigned as Plaintiff's case manager [and] Defendant Wilanowski as Plaintiff's psychiatrist." (*Id.*) At Plaintiff's first meeting with Defendant Chapin, "Plaintiff notified Chapin that Defendants Gauderer, Clark, Woodin, Howland, Fahai, Dawdy, Washington, Altshuler, Wood, Costner, Wilanowski, [and] . . . Farrish violated Plaintiff's Nation of Islam belief to abstain [from] drug use." (*Id.*) Plaintiff advised Defendant Chapin that "sometimes the psychotropic [medications] caused a false feeling of intoxication," and "Defendant Chapin said she [could not] help [Plaintiff]." (*Id.*)

On October 27, 2020, "Plaintiff had his last video hearing with Defendant Wilanowski before she allegedly retired." (*Id.*, PageID.17.) "Defendant Wilanowski orally notified Plaintiff

6

that she [had] initiated an order for mandatory Haldol injections 'in retaliation' for Plaintiff's prior oral [and] written grievances and PREA grievances at DRF, MCF, KCF, [and] URF facilities." (*Id.*) In September of 2020, Plaintiff had mailed Defendant Gustafson a step I grievance regarding Plaintiff's "retaliatory transfer from KCF to URF," and "[b]y October 27, 2020, Defendants Kowalski and Gustafson never responded to Plaintiff's attempt to utilize the MDOC grievance system." (*Id.*)

Subsequently, on December 1, 2020, Plaintiff "contracted the COVID-19 virus," and "[w]hile on quarantine status Plaintiff attempted to hand deliver a timely signed grievance form to Defendant Newton while inside her office." (*Id.*) "Defendant Newton read the grievance form [and] then put it in her paper shredder." (*Id.*) Defendant Newton stated, "Welcome to URF;' URF stands for 'You are f**ked,' and Team URF don't [sic] help prisoners win lawsuits against us." (*Id.*, PageID.18 (asterisks in original).)

On June 18, 2021, Plaintiff submitted a written request to Defendant Wood "requesting discharge from involuntary mental health services," and Plaintiff submitted the two psychological evaluations from his criminal proceedings as support for his request. (*Id.*) "Defendant Wood refused to discharge Plaintiff from involuntary mental health services." (*Id.*)

On March 2, 2022, Plaintiff had an interview with Tracy Olson (not a party) and Defendant Chapin regarding a grievance Plaintiff had submitted against Defendant Wilanowski. (*Id.*, PageID.19.) At the meeting, Plaintiff requested "the address for the proper circuit court venue to appeal against the denial of [his] prior panel order appeal," and "Defendant Chapin said that she [would] only give [Plaintiff] the state court venue address if [Plaintiff] ha[d] group sex with her and Tracy R. Olson inside her office." (*Id.*, PageID.19–20.) Plaintiff "denied" Defendant Chapin's request. (*Id.*, PageID.20.)

Further, Plaintiff alleges that between August 29, 2020, and September 1, 2022, "Plaintiff complained in writing to [the] URF health care unit, regarding past [and] present physical injuries from involuntary drug treatment." (*Id.*, PageID.18.) Plaintiff states that his "physical injuries included, but [were] not limited to:" "daily ear bleeding," "erectile dysfunction," "memory loss," "scalp hair loss," "hearing loss," "petit mal seizures," "organ swelling," "allergic reactions," "facial tremors," and "subcellular harm/chromosome damages." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment rights by retaliating against him, denying his right to the "freedom of religious expression," and denying him "access to the prison grievance system for certain claims." (*Id.*, PageID.22–24.) Plaintiff also avers that Defendants violated his rights under the Religious Land Use and Institutionalized Persons Act. (*Id.*, PageID.22.) Additionally, Plaintiff avers that Defendant Unknown Party #1 and Defendant Shields used excessive force against him in violation of the Eighth Amendment. (*Id.*, PageID.25.) Plaintiff further avers that all Defendants violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment and violated his right to due process under the Fourteenth Amendment. (*Id.*, PageID.26–27.) As relief, Plaintiff seeks compensatory, punitive, and nominal damages, as well as declaratory and injunctive relief. (*Id.*, PageID.28.)

## II.   Analysis

### A.   Plaintiff's Complaint

As set forth above, in action no. 2:22-cv-150—a case that Plaintiff previously filed in this Court—Plaintiff sued more than eighty Defendants, and in an opinion and order entered on September 14, 2022, the Court determined that all but five Defendants were misjoined. In addressing Plaintiff's misjoined claims and Defendants in its September 14, 2022, opinion, the

8

Court advised Plaintiff regarding the proper joinder of parties and claims. Specifically, with respect to the proper joinder of parties and claims, the Court stated:

> Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:
>
>> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>>
>> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.
>
> 7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).
>
> Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 [] (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Op., *Atkins v. Dawdy*, (W.D. Mich. Sept. 14, 2022), (ECF No. 22, PageID.240–41.) Further, after determining that all but five of the eighty Defendants were misjoined, the Court cautioned Plaintiff "that he must limit all future actions to Defendants and claims that are transactionally related to one another." *Id.*, (ECF No. 22, PageID.247.) The Court also cautioned Plaintiff "that failure to

9

file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review." *Id.*

On October 20, 2022, Plaintiff initiated the present action. (Compl., ECF No. 1.) Contrary to the Court's instructions in its September 14, 2022, opinion in action no. 2:22-cv-150, Plaintiff submitted a scattershot complaint in this action, naming thirty Defendants and addressing an approximately three-year time period, during which Plaintiff was incarcerated at three different correctional facilities. (*See id.*) Although Plaintiff's complaint presents a number of different claims against Defendants, much of Plaintiff's complaint sets forth allegations regarding his receipt of involuntary mental health treatment. Plaintiff appears to believe that his initial receipt of involuntary mental health treatment resulted in the subsequent actions that Defendants took against him at three different correctional facilities; but, such belief does not create the proper joinder of claims and parties. Plaintiff seeks to connect the initial decision to provide involuntary mental health treatment to him to all of the events that followed this decision simply because the first event necessarily preceded the subsequent events. However, all of the events described in Plaintiff's complaint do not arise from the same transaction or occurrence because the events occurred over the span of approximately three years at three different correctional facilities and they involved different Defendants and supervisors. *See Proctor*, 661 F. Supp. 2d at 778. Plaintiff therefore has filed a scattershot complaint with a number of misjoined parties and claims in this action.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may dismiss a case "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b). "Although Rule 41(b) does not expressly provide for a *sua sponte* dismissal (the rule actually provides for dismissal on defendant's motion), it is well-settled

that the district court can enter a *sua sponte* order of dismissal under Rule 41(b)." *Rogers v. City of Warren*, 302 F. App'x 371, 375 n.4 (6th Cir. 2008) (citing *Link v. Wabash Railroad Company*, 370 U.S. 626, 630 (1962)).

As set forth above, in the Court's September 14, 2022, opinion in action no. 2:22-cv-105, the Court advised Plaintiff regarding the proper joinder of parties and claims, and the Court specifically warned Plaintiff "that failure to file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review." Op., *Atkins v. Dawdy*, (W.D. Mich. Sept. 14, 2022), (ECF No. 22, PageID.240–47.) Contrary to the Court's instructions in the September 14, 2022, opinion, Plaintiff filed a scattershot-type complaint in this action naming thirty Defendants and setting forth events that occurred over a three-year time period while he was incarcerated at three different correctional facilities. Under these circumstances, the Court concludes that Plaintiff has wholly failed to comply with the Court's instructions in its September 14, 2022, opinion in action no. 2:22-cv-105 regarding the proper joinder of parties and claims. Therefore, the Court will dismiss this action without prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to comply with the Court's order.

  **B.**  **Plaintiff's Pending Motions**

After filing his complaint, Plaintiff filed a "motion for temporary restraining order [and] motion for preliminary and permanent injunction" (ECF No. 3), a motion to serve the complaint (ECF No. 11), and a motion to expedite (ECF No. 12).

    **1.**  **"Motion for Temporary Restraining Order and Motion for Preliminary and Permanent Injunction"**

In Plaintiff's "motion for temporary restraining order and motion for preliminary and permanent injunction," Plaintiff requests that the Court "issue an injunction ordering Defendants

11

Washington and Dawdy to immediately discharge Plaintiff from involuntary mental health services and expunge all false mental health records drafted by various Defendants, and order Defendants Washington and Dawdy to reverse Plaintiff's mentally ill diagnosis." (ECF No. 3, PageID.117.)

Preliminary injunctions and temporary restraining orders are some of "the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013); *Ne. Ohio Coal.*, 467 F.3d at 1009; *Nader*, 230 F.3d at 834.

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).

Plaintiff has not made such a showing. It is not at all clear from Plaintiff's complaint that Plaintiff has a substantial likelihood of success on his claims. Further, with respect to Plaintiff's request for a permanent injunction, as set forth in this opinion, the Court will dismiss this action without prejudice due to Plaintiff's failure to comply with the Court's instructions in its September 14, 2022, opinion in action no. 2:22-cv-150. Because this action will be dismissed, a permanent injunction is not warranted.

Accordingly, Plaintiff's "motion for temporary restraining order and motion for preliminary and permanent injunction" (ECF No. 3) will be denied.

### 2.     Motion to Serve the Complaint and Motion to Expedite

In Plaintiff's motion to serve the complaint, he requests that the Court appoint "a process server" to electronically serve the complaint. (ECF No. 11, PageID.143–44.) Similarly, in Plaintiff's motion to expedite, he requests that the Court "expedite the proceedings" and electronically serve the complaint.[2] (ECF No. 12, PageID.146–47.)

As set forth in this opinion, this action will be dismissed without prejudice due to Plaintiff's failure to comply with the Court's prior order. Therefore, this action will not be served on Defendants. Accordingly, Plaintiff's motion to serve the complaint (ECF No. 11) and motion to expedite (ECF No. 12) will be denied.

---

[2] In Plaintiff's motion to expedite, he states that the "Clerk's Office failed to comply with Plaintiff['s] . . . December 2022 written request for a docket entry sheet for this case." (ECF No. 12, PageID.146.) The Court notes that no such request was received from Plaintiff in December of 2022. The Court received a letter from Plaintiff on January 20, 2023, in which Plaintiff requested a copy of the docket sheet for this action, and in response to this request, the Clerk's Office mailed a copy of the docket sheet to Plaintiff. (ECF No. 14.)

**Conclusion**

For the reasons set forth above, this action will be dismissed without prejudice to Plaintiff's right to institute new actions with properly joined claims and parties. Further, Plaintiff's pending motions (ECF Nos. 3, 11, and 12) will be denied.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

An order and judgment consistent with this opinion will be entered.

Dated:   March 13, 2023                              /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge